IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYMON R. LANIER,            :
            Plaintiffs       : No. 1:09-CV-2140
                         :
        v.              : (JUDGE CONNER)
                         : (MAGISTRATE JUDGE PRINCE)
U.S. XPRESS ENTERPRISES, INC., et al. :
        Defendants      :

## REPORT AND RECOMMENDATION

### I. Procedural Background

Pursuant to an Order entered on January 18, 2011 (Doc. 71), the Honorable

Christopher C. Conner referred the Defendant's pending Motion for Summary

Judgment to the undersigned for the purpose of preparing a Report and

Recommendation.

Plaintiff initiated this action by filing a complaint on November 2, 2009

(Doc. 1) against several Defendants, of which only Arnold Transportation

Services, Inc. ("ATS") remains a party to this action.[1]  The action alleges racial

discrimination in employment in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e *et seq*., and similar violations of the Pennsylvania

---

[1]  All other parties named as Defendants in the complaint were dismissed
pursuant to stipulations and orders dated February 16, 2010 (Doc. 30) and August
27, 2010.  (Doc. 42).

Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* Specifically, the complaint asserts Plaintiff was improperly terminated because of his race.

On September 1, 2010, Defendant filed a motion for summary judgment, a statement of material facts and a supporting brief. (Docs. 45, 46, 47). Plaintiff filed a brief in opposition to the motion and a counter-statement of material facts on October 25, 2010 (Docs. 55, 56), to which Defendant filed a reply brief on November 10, 2010 (Doc. 60). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Defendant's motion for summary judgment be granted.

## II. Factual Background

Plaintiff, an African-American, was hired by ATS in 2004. At the time of his termination on January 2, 2008, Plaintiff was employed as a dedicated-route truck driver. Plaintiff's job duties included picking-up and delivering loads with his trucks. ATS promoted Plaintiff from being a regional driver to being a dedicated route driver on the New Penn Dedicated Route, which was more desirable, easier to drive and provided for a more regular work schedule (Doc. 46, ¶9; Doc. 56, ¶ 9).

On December 27, 2007, an announcement was made to all truck drivers via

Qualcomm,[2] that December 31 was a regularly scheduled work day and that all employees were to report for work unless they were previously scheduled to be off. Plaintiff acknowledges receiving this message.

Thereafter, on December 28, 2007, Plaintiff specifically and individually was instructed by Robert Thomas[3] that his particular dedicated route was shipping on December 31, 2007 and that he was required to call-in to dispatch between 8 a.m. and 9 a.m. for load information. Plaintiff could not recall if he received this second message or not, but does concede that this message was sent to his truck on that date.

On December 31, 2007, Plaintiff called in for his load information at 6:42 a.m,[4] and he was told to call back between 8 a.m and 9 a.m. The parties dispute to whom Plaintiff spoke–Plaintiff avers it was Rose Shambaugh, who told him there

---

[2] A form of electronic message that can be sent and received via a device contained within a driver's truck

[3] Mr. Thomas was the drive manager on the New Penn Dedicated Route and Plaintiff's immediate supervisor. (Doc. 46, ¶¶ 17-18).

[4] Plaintiff maintains that this time was his normal call-in time to obtain his load information. (Doc. 56, ¶ 33). However, Robert Thomas testified that even if that were his usual call in time during a normal week, different time periods may apply during holiday weeks. Because the company may not have load information until a certain time, drivers were instructed what time period to call in to receive information about loads. (Doc. 48, Ex. 2, p. 16-17).

was no load for him to haul that morning.  Defendant contends, however, that Edward Olinger[5] talked to Plaintiff, who informed him there was no details available about his load at that time and instructed him to call back between 8 a.m and 9 a.m.  Plaintiff does not dispute that he disregarded instruction to call in between 8 a.m and 9 a.m.  Defendant further argues that Plaintiff not only failed to call back but was unable to be reached when Defendant attempted to contact him numerous times, *to wit*., 7:39 a.m, 8:26 a.m., 8:59 a.m. and 9 a.m.

As a result of these circumstances, Defendant maintains that another driver had to deliver Plaintiff's assigned load, which was delivered late as a result of Plaintiff's unavailability and was considered a "load failure."  Plaintiff was terminated from his employment with the Defendant on January 2, 2008.  The present matter followed.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[5] Defendant avers that Plaintiff's supervisor, Robert Thomas, was on vacation on December 31, 2007.  Edward Olinger was covering drivers under Robert Thomas' management on that date.

judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment

satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. *See* Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## IV. Discussion

### (A) Title VII and PHRA

Plaintiff, an African-American, asserts racial discrimination in violation of Title VII and the PHRA. Under Title VII, it is unlawful for an employer:

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000(e)(2).  The PHRA likewise prohibits discrimination by employers on the basis of race and/or nationality.  *See* 43 P.S. § 955.[6]

In the absence of direct evidence of disparate treatment, cases such as Plaintiff's are examined under the evidentiary framework first set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas analysis, a plaintiff must show, by a preponderance of the evidence, a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  If the employee is able to do this, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions against the employee.  Id.  If the employer can meet this burden, then the burden shifts back to the employee to prove, by a preponderance of the evidence, that the reasons articulated by the defendant were actually a pretext for discriminatory practices.

---

[6] The court will analyze Plaintiffs' Title VII and PHRA claims under the same standards inasmuch as courts generally have interpreted the PHRA in accordance with the standards applied to claims brought under Title VII of the Civil Rights Act of 1964. Grande v. State Farm Mut. Auto. Ins. Co., 83 F. Supp. 2d 559, 562 (E.D. Pa. 2000).

Id. at 804. "If the employer offers evidence of a legitimate, non-discriminatory reason for the adverse employment decision, the plaintiff must produce evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Potoski v. Wilkes University, 692 F. Supp. 2d 475, 484 (M.D. Pa. 2010) (Vanaskie, J.) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Summary judgment is appropriate on behalf of the employer if the employee fails to meet his burden at either the prima facie or pretext stage of the framework.

*(B) Prima facie case*

Under Title VII and the PHRA, a prima facie case of discrimination is demonstrated by the following elements: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the job in question; (3) plaintiff suffered an adverse employment action; and (4) circumstances existed that support an inference of discrimination. *See* Geraci v. Moody-Tottrop, Int'l, Inc., 82 F.3d 578, 580-81 (3d Cir. 1996) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)); *see* McDonnell Douglas Corp., 411 U.S. at 802. The fourth prong of the prima facie case may be shown by sufficient evidence that

8

non-members of the protected class were treated more favorably. *See* <u>Goosby v. Johnson & Johnson Med., Inc.</u>, 228 F.3d 313, 318-19 (3d Cir. 2000).

The parties do not dispute that Plaintiff can satisfy the first and third elements of a prima facie case of discrimination, *to wit.*, as an African-American, he is a member of a protected class and by being terminated, he suffered an adverse employment decision. The parties dispute whether Plaintiff was qualified for the position and whether the circumstances support an inference of discrimination.

### 1. *Qualified for position*

Defendant does not argue that Plaintiff lacked the necessary skills and abilities to perform the work of a truck driver inasmuch as he had performed that job for several years. Rather, Defendant maintains that reliable attendance is a bona fide qualification for the position and that Plaintiff's failure to call-in or show up evidences his unreliability, thus rendering him unqualified for the position.

As noted by Defendant, "[c]ourts have consistently recognized that regular attendance is an essential function of a job." <u>Veltri v. Thompson Consumer Electronics, Local No. 178</u>, No.: 3:02-CV-0645, 2004 WL 1490522, *5 (M.D. Pa. May 18, 2004) (finding plaintiff unqualified for her position where she had six

unexcused absences from work; *see* <u>Cubbage v. Bloomberg, L.P.</u>, 2010 WL 3488619, *17 (E.D. Pa. Aug. 31, 2010); <u>Blake v. UPMC Passavant Hosp.</u>, Civ. A. No. 06-193, 2008 WL 936917, *6 (W.D. Pa., April 4, 2008); <u>Tyndall v. Nat'l Educ. Ctrs., Inc.</u>, 31 F.3d 209, 213 (4th Cir.1994); <u>Carr v. Reno</u>, 23 F.3d 525, 530 (D.C. Cir.1994); <u>Jackson v. Veterans Admin.</u>, 22 F.3d 277, 279 (11th Cir.1994); <u>Santiago v. Temple Univ.</u>, 739 F. Supp. 974, 979 (E.D. Pa.1990), *aff'd*, 928 F.2d 396 (3d Cir.1991). Indeed, with any job "trustworthiness, reliability, veracity, good judgment . . . are all material qualifications [.]" <u>Williams v. Boorstin</u>, 663 F.2d 109, 117 (D.C. Cir.1980). However, it is unclear whether a single failure to be available to work or to call-in as directed is indicative of a lack of reliability. The inability to maintain regular attendance would seem more suggestive of a lack of reliability rendering an individual unqualified for a position. The parties have not argued, nor does it appear to be in evidence, that Plaintiff had recurrent issues with attendance in his employment. This argument has not been made, nor does the record reflect evidence supporting such a contention. Consequently, the court is unable to conclude that a single failure of availability to work indicates a lack of reliability sufficient to render one unqualified for the position. For purposes of summary judgment, Plaintiff has met this prong of a prima facie case.

## 2. Inference of discrimination

To meet the fourth prong of a prima facie case, a plaintiff must put forth facts to establish that the conditions surrounding his adverse employment action give rise to the inference of discrimination. Adelman v. GMAC Mortg. Corp., No.: 97-691, 1997 WL 805274, *4 (E.D. Pa. Dec. 30, 1997). Plaintiff maintains that other drivers were treated more favorably. *See* Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006) (stating that a plaintiff establishes the fourth element of a prima facie case if he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees); Maynard v. Bd. of Regents of Div. of Univs. of Fl. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003) (same). He further asserts that his dismissal was not in conformity with the company policy as outlined in the employee handbook and, additionally, that others employed by the Defendant made racial comments derogatory to African-Americans. Defendant contends, however, that the arguments advanced by Plaintiff are unsupported by the evidence and/or do not raise an inference of a racial animus.

### a. Preference to other drivers

Plaintiff avers that owner-operators[7] were given preference in loading and

---

[7] An owner-operator is an independent driver, not a company driver.

routes, which violated Defendant's policy of first-in, first-out.  Defendant noted,

however, that owner-operators are given preference because they are less

expensive to use and have the option to refuse loads.  (Doc. 46, ¶ 64).  Moreover,

the policy to which Plaintiff refers indicates that "[i]n most cases, drivers are

dispatched on a first in, first out basis."  Because this policy specifically expresses

that in *most* instances the first in, first out policy be utilized, there is the implied

connotation that this policy will not be utilized in *all* instances.  It would be

uncertain, moreover, the extent that any such policy would be applicable to those

drivers not in Defendant's employ, i.e. owner-operators.  Most importantly,

however, is the fact that there is nothing in Plaintiff's proposition regarding the

preference afforded to owner-operators that related to race or a racial animus in

work assignments.  Despite contentions that he was made to wait a longer period

of time for loading and load assignments, Plaintiff has not pointed to objective

evidence in the record demonstrating that African-American drivers were treated

less favorably than Caucasian drivers in receipt of work loads and work

assignments.  In fact, Defendant has averred, and Plaintiff does not dispute, that

mistreatment of which Plaintiff complains are the types of delays and/or

inconveniences experienced by all truck drivers.  (Doc. 46, ¶¶ 48, 49; Doc. 56, ¶¶

48, 49).[8] This argument, therefore, fails to satisfy the fourth prong of a prima facie case of racial discrimination.

### b. Others who were not terminated

Plaintiff additionally notes that two Caucasian individuals who did not work on December 31, 2007, despite being scheduled, were not terminated. Defendant maintains, however, that one of these individuals, Don Crowley, had a previously-scheduled vacation day on December 31, 2007. Consequently, listing him as scheduled to work was erroneous. With respect to Bill Dissinger, Defendant lists him as "availability change" which it indicates could mean he was ill or had a scheduled vacation. Moreover, Defendant emphasizes that Plaintiff was not terminated for failing to work on December 31, 2007 but for failing to call in on that day as directed. Plaintiff has presented no evidence that other individuals who were expressly directed to call in at a certain time and did not were not terminated.

Further, although Plaintiff challenges his termination as contrary to company policy, the evidence he relies upon does not support his contention. (Doc. 56, Ex. 15). While the company policy permits up to five unexcused

---

[8] To the extent Plaintiff alleges delays and miscommunication regarding loads affected him disproportionately, he has offered no evidence of this.

13

absences, it also requires notification to a supervisor or manager when one would not be reporting to work. The policy warns that "disciplinary action, up to and including termination of employment" may result if one fails to call in to report he will not be at work. (Id.). Indeed, Plaintiff has identified no individuals who were dedicated route drivers who were not dismissed for failing to call in as directed. This argument, therefore, fails to establish an inference of discrimination.

### c.    *Racial comments*

Plaintiff next maintains that racial comments allegedly made by his co-workers are indicative of racial animus towards African-Americans. Plaintiff believes that Matthew Totaro stated: "the brother has got problems with me." Totaro denies making the comment, which Plaintiff acknowledges was made prior to 2005. In response to Plaintiff's observation that there were only white employees in the back room at the Camp Hill terminal, Dallas Kirk, the Safety Director for Defendant's Camp Hill terminal, is alleged to have stated: "You people are where you should be." Kirk denies making this comment. Plaintiff also asserts that Robert Thomas treated him differently based on his race when he announced, in the presence of other drivers, that Plaintiff earned more money than

some Caucasian drivers who had been with ATS longer than he. [9]  Plaintiff

concedes, however, that such a statement was true.  (*See* [Doc. 46, ¶ 13](); [Doc. 56, ¶](

[13]()).  Finally, Plaintiff avers that, within his first few months of employment, he

overheard some retired drivers refer to his route as a "white man's run" because it

was an easier route to drive than others.  Defendant asserts that any such

comments are not attributable to those who made the decision to terminate his

employment.  It further contends that such comments are insufficient to raise an

inference of discrimination.  As a result, it argues, no racial animus can be

ascribed to Plaintiff's dismissal.

Courts must bear in mind that "Title VII is not 'a general civility code for

the American workplace.'" Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006),

*implied overruling on other grounds recognized by* Moore v. City of Philadelphia,

461 F.3d 331, 2006 WL 2492256, at *8-9 (3d Cir. 2006) (quoting Oncale v.

Sundowner Offshore Services, Inc., 523 U.S. 75, 80-81 (1998)).  Nor is Title VII

violated by "[m]ere utterance of an ... epithet which engenders offensive feelings

in an employee" or by mere "discourtesy or rudeness[.]"  Faragher v. City of Boca

---

[9]  Although Plaintiff disputes Defendant's statement of facts that his race-related evidence is limited to these three alleged comments, his response to the statement of material facts states only: "Disputed.  See Exhibits 1-27."  ([Doc. 56, ¶](
[65]()).  To the extent Plaintiff relies on evidence not discussed herein, he has failed to specifically identify the factual contentions that are disputed.

Raton, 524 U.S. 775, 787 (1998) (citations omitted). Thus, "'simple teasing,'

offhand comments, and isolated incidents (unless extremely serious)" are not

actionable under Title VII. Id. at 788. *See also* Meritor Sav. Bank, FSB v.

Vinson, 477 U.S. 57, 67 (1986) (noting that the "mere utterance of an ethnic or

racial epithet which engenders offensive feelings in an employee" is insufficient to

violate Title VII); Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir.1994) (requiring

"more than a few isolated incidents of racial enmity" or "sporadic racial slurs" to

establish a Title VII violation); *see* Grigsby v. Kane, No. 99-2083, 2005 WL

348303, at *16 (M.D. Pa. Feb. 2, 2005) (holding that uncorroborated allegedly

racist comment, even in conjunction with some evidence of disparate treatment,

does not "surpass the sufficiency threshold" for a factfinder to infer that racial

discrimination was a determinative factor for plaintiff's termination).

These isolated comments to which Plaintiff points may be considered

insensitive but do not show racial animus sufficient to raise an inference of

discrimination. *See* Ezold v. Wolf, Block, Schoor & Solis-Cohen, 983 F.2d 509,

545, 547 (3d Cir.1992) (stray remarks by nondecisionmakers that are temporally

and substantively distant from the adverse employment action cannot form the

basis of a discrimination suit). Moreover, the temporal remoteness of these

statements from Plaintiff's termination weigh against an inference of

discrimination.  *See* Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1112 (3d

Cir.1997) (comment made by decision maker approximately four to five months

prior to termination insufficient to prove by a preponderance of the evidence that

discrimination was a determinative cause of employee's termination). Finally,

given the decision to terminate his employment was made by Robert Thomas and

Robert Karferlee, who, Plaintiff concedes, never acted in a discriminatory way

towards him, a suggestion of racial enmity could not be concluded by the finder of

fact.  (Doc. 46, ¶ 59; Doc. 56, ¶ 59; Doc. 48, Ex. 2, p 24-25). Consequently, the

alleged acts do not give rise to an inference of discrimination.

> #### d.    Other assertions

Finally, it bears observing that Plaintiff concedes that he received pay

higher than some Caucasian drivers who had been employed by the Defendant

longer than he.  (Doc. 46, ¶13; Doc. 56, ¶13).  This weighs against an inference of

racial discrimination being drawn.[10]  Based on all these factors, Plaintiff has failed

to carry his burden of establishing the fourth prong of a prima facie case of

discrimination by pointing to evidence that would permit an inference of

---

[10]  Plaintiff's additional claims that he was not recognized for safety awards
and that non African-American drivers received higher pay and better loads are
contentions wholly unsupported in the record.  Such assertions argue conclusions,
not facts in evidence and, therefore, carry no weight in the present analysis.

discrimination to be drawn in these circumstances. Consequently, the motion for summary judgment should be granted.

### (C) Legitimate non-discriminatory reason

Having concluded that Plaintiff has not stated facts sufficient to establish his prima facie cases of discrimination, further analysis through the burden-shifting framework established under McDonnell Douglas to determine whether Defendant has a legitimate non-discriminatory reason for its actions and whether Plaintiff can establish that the proffered reasons are pretextual is unnecessary. Nonetheless, for the sake of argument the court will examine whether these burdens have been met.

Defendant points out that Plaintiff was not terminated for failing to work on December 31, 2007 but rather for failing to call-in between 8 a.m. and 9 a.m. as directed by Robert Thomas on December 28, 2007 and as requested by dispatch when he called in early at 6:42 a.m. on December 31, 2007. It has, therefore, offered a legitimate non-discriminatory reason for Plaintiff's discharge. Having met this burden, Plaintiff is therefore required to offer evidence suggesting that the reason offered by the Defendant is pretextual for racial discrimination.

*(D) Pretext*

Plaintiff must next offer evidence "from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Showalter</u>, 190 F.3d at 235; <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir.1997)(en banc). This standard places a difficult burden on the plaintiff. <u>Fuentes</u>, *supra* at 764. "To discredit the employer's proffered reason, [] the plaintiff cannot simply show that the employer's decision was wrong or mistaken. . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence.'" <u>Fuentes</u>, 32 F.3d at 765 (citation omitted). The court must then determine whether the Plaintiffs' evidence is sufficient "to permit a reasonable fact finder to conclude that the [employer's] reasons are incredible...." <u>Sheridan v. E.I. DuPont De Nemours & Co.</u>, 100 F.3d 1061, 1072 (3d Cir. 1996).

Because the Defendant has come forward with a legitimate non-discriminatory reason for its actions, Plaintiff has the burden of establishing that this reason was pretextual. However, by asserting that he has "pointed to

direct and/or circumstantial evidence to discredit Defendant's profered [sic] reasons," Plaintiff arguments evidencing the pretextual nature of Defendant's position are purely conclusory. (*See* Doc. 55, p. 12-13). "Pretext cannot be established based on speculation and mere conclusory allegations." Boykins v. Lucent Technologies, Inc., 78 F. Supp.2d 402, 413 (citing Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir.1991)) ("Merely reciting that [race] was the reason for the decision does not make it so."), *abrogated on other grounds by*, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 517-18 (1993).

Although Plaintiff is permitted to rely on the same evidence at both the prima facie stage and the pretext stage, as discussed above, such evidence has been found to be insufficient to support an inference of discrimination. Moreover, at this stage, the evidence on which Plaintiff relies fails to demonstrate any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reason for terminating his employment. Consequently, even if he had established a prima facie case, Plaintiff has failed to carry his additional burden of showing Defendant's stated reason for the termination was a pretext for racial discrimination. The motion for summary judgment should, therefore, be granted.

## V. Recommendation

Based on the foregoing, it is respectfully recommended that Defendant's motion for summary judgment (Doc. 45) be granted.

Date: February 24, 2011      s/ William T. Prince
                William T. Prince
                United States Magistrate Judge